**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LOUIS LEONOR,

      Plaintiff/Counter-Defendant,

v.                                Case No. 12-15343

PROVIDENT LIFE AND ACCIDENT
COMPANY and
PAUL REVERE LIFE INSURANCE
COMPANY,

      Defendants/Counter-Claimants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

After a cervical spine disc herniation left Plaintiff Louis Leonor unable to continue

working as a dentist, Defendants Provident Life and Accident Company ("Provident")

and Paul Revere Life Insurance Company ("Paul Revere") paid him "Total Disability"

benefits pursuant to three disability income insurance policies.  Shortly thereafter,

Defendants ceased paying Plaintiff benefits because pre-disability, in addition to

practicing dentistry, Plaintiff owned and managed several dental practices and other

businesses, and post-disability he continued in this management role.  Therefore,

Defendants concluded that Plaintiff was not "Totally Disabled" under the policies.

Plaintiff filed suit against Defendants alleging breach of contract and fraud.  On

March 20, 2013, the court granted Defendants' motion to dismiss Plaintiff's fraud claim

under Federal Rule of Civil Procedure 12(b)(6).  The parties now cross-move for

summary judgment on Plaintiff's remaining breach of contract claim.  The motion has

been fully briefed, and a hearing is unnecessary.  *See* E.D. Mich. LR 7.1(f)(2).  For the reasons that follow, the court will deny Defendants' motion for summary judgment and grant Plaintiff's motion for summary judgment.

## I.  BACKGROUND

### A.  Plaintiff's Occupation

Plaintiff, currently age 51,  first became licensed to practice dentistry in 1987. (Pg. ID ## 542, 1269.)  Shortly thereafter, he began to acquire various dental practices in Southeastern Michigan.  Thus, in addition to practicing dentistry, Plaintiff sought out practices, interviewed the doctors and personnel in those practices, and performed due diligence with legal counsel and accountants.  (Pg. ID # 400–02.)  Between 1989 and 2008, Plaintiff became the sole proprietor of Oakcrest Dental Center, P.C, Flat Rock Dental Center, Stoneybrook Dental, P.C., and Romulus Family Dental Center.  (Pg. ID # 1342–43.)  Plaintiff "owned all of these practices . . . and . . . received income from all of them in various forms, whether it be W-2s for a practice where [he] performed dentistry or 1099 wages for the practices that [he] owned."  (Pg. ID # 396.)  In addition to owning dental practices, Plaintiff invested in and owned supply companies and various commercial and residential real estate.  (Pg. ID ## 883, 543.)

In March 2009, Plaintiff had surgery to correct a cervical spine disc herniation. (Pg. ID # 1345.)  Prior to surgery, Plaintiff performed dental procedures at Stoneybrook Dental 35 to 40 hours a week.  (Pg. ID # 1282.)  He also spent 15 to 25 hours per week "managing/overseeing all his businesses, both dental and non-dental."  (Pg. ID # 542.)

2

Since the surgery, Plaintiff has been unable to work as a dentist[1] but he has nonetheless remained gainfully employed.  (Pg. ID ## 1283, 404.)  During his deposition, when asked, "[i]n what occupation have you been employed since March of '09?" Plaintiff answered, "[o]wner, manager, investments, you know, my businesses." (Pg. ID # 405–06.)  Plaintiff also stated that he has "more aggressively" sought out "investment opportunities in terms of purchasing dental practices."  (Pg. ID # 402.) Plaintiff is currently employed at eight dental practices.  (Pg. ID # 387.)  Despite his inability to work as a dentist, Plaintiff is able to perform duties related to acquiring, owning, and managing his various dental practices and businesses.  (Pg. ID # 1348.) Plaintiff's income has increased since the March 2009 surgery that left him unable to perform dentistry.  (*Id.*)

## B.  The Policies

Beginning in 1990, Plaintiff purchased three disability income insurance policies (the "Policies") from Defendants Provident and Paul Revere.[2]  On the application for each Policy, Plaintiff listed "dentist" under "Occupation."  (Pg. ID ## 944, 977, 1016.) Plaintiff annually renewed the Policies and paid the required premiums.  (Pg. ID

---

[1] In Defendants' counter-statement of material facts they state, "Defendants admit for the purpose of the present Motion that [Plaintiff] is unable to practice dentistry." (Pg. ID # 1283.)  As such, the court will not discuss Plaintiff's specific physical limitations resulting from the March 2009 surgery.  However, the court notes that during Plaintiff's August 17, 2013 deposition, he testified that "physical and psychological" conditions prevent him from practicing dentistry.  (Pg. ID # 885.)  In addition to "nerve damage" he noted that he suffers from depression.  (*Id.*)

[2] Provident and Paul Revere are wholly-owned subsidiaries of Unum Group.  (Pg. ID # 1274.)

# 1274.)  The Policies state that Plaintiff will receive disability benefits if he has a "Total

Disability" or a "Residual Disability," as defined by the Policies.

### 1.  Policy Number 0102450113

On April 24, 1990, Paul Revere issued policy number 0102450113 (the "0113

Policy") to Plaintiff.  (Pg. ID # 906.)  Regarding "Total Disability," the 0113 Policy states:

> "Total Disability" means that because of Injury or Sickness:
>
> > a.    You are unable to perform the important duties of Your
> >       Occupation; and
> > b.    You are under the regular and personal care of a Physician.

(Pg. ID # 920.)  The monthly benefit amount for a period of "Total Disability" "is the

Maximum Monthly Amount" which is $7,650.00 under the 0113 Policy.[3]  (Pg. ID ## 922,

914.)  With regard to "Residual Disability," the 0113 Policy states:

> "Residual Disability," prior to the Commencement Date, means that due to
> Injury or Sickness:
>
> > a.    (1) You are unable to perform one or more of the important
> >       duties of Your Occupation; or
> >       (2) You are unable to perform the Important duties of
> >       Your Occupation for more than 80% of the time
> >       normally required to perform them; and

---

[3] In his statement of material facts, Plaintiff states, "$8,802.00 monthly is attributable to the 0113 Policy" to which Defendants respond "[t]he amount of benefits for Totally Disabled for each Policy is expressly set out in each Policy."  (Pg. ID # 1281.) As noted above, the 0113 Policy states that the "Maximum Monthly Amount" for "Total Disability" is $7,650.00.  (Pg. ID # 914.)  However, correspondence found in the record confirms that, on at least two occasions, Defendants issued a check to Plaintiff under the 0113 Policy for $8,802.00  (Pg. ID ## 567, 571.)  The 0113 Policy states that $230.00 "will be automatically added to your monthly total disability benefit . . . on each increase date."  (Pg. ID # 912.)  There are five increase dates listed, resulting in a total increase of $1,150.00, which, if added to $7,650.00 equals $8800.00.  This total, $8800.00, is, of course, still $2.00 shy of the $8802.00 Plaintiff claims is the value of the "Maximum Monthly Amount."

     b.     Your Loss of Earnings is equal to at least 20% of Your Prior Earnings while You are engaged in Your Occupation or another occupation; and

     c.     You are under the regular and personal care of a Physician.

As of the Commencement Date, Residual Disability means that due to the continuation of that Injury or Sickness:

     a.     Your Loss of Earnings is equal to at least 20% of Your Prior Earnings while You are engaged in Your Occupation or another occupation; and

     b.     You are under the regular and personal care of a Physician.

Residual Disability must follow right after a period of Total Disability that lasts at least as long as the Qualification Period, If any.

(Pg. ID # 921.)  "Your Occupation" is defined as "the occupation in which You are regularly engaged at the time You become Disabled."  (Pg. ID # 920.)

### 2.  Policy Number 0102748090

On July 1, 1995, Paul Revere issued policy number 0102748090 (the "8090 Policy") to Plaintiff.  (Pg. ID # 951.)  Regarding "Total Disability," the 8090 Policy states:

"Total Disability" means that because of Injury or Sickness:

     a.     You are unable to perform the important duties of Your Occupation; and

     b.     You are not engaged in any other gainful occupation; and

     c.     You are receiving Physician's Care.  We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to you.

(Pg. ID # 959.)  The monthly benefit amount for a period of "Total Disability" "is the Maximum Monthly Amount" which is $1,850.00 under the 8090 Policy.  (Pg. ID ## 961, 953.)  As for "Residual Disability," the 8090 Policy states:

"Residual Disability", prior to the Commencement Date, means that due to Injury or Sickness which begins prior to age 65:

    a.      (1) You are unable to perform one or more of the important duties of Your Occupation; or
(2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and

    b.      You are receiving Physician's Care.  We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You; and

    c.      You are not Totally Disabled.

As of the first Commencement Date to occur, Residual Disability means that due to the continuation of that Injury or Sickness:

    a.      You incur a Loss of Earnings while You are engaged in Your Occupation or another occupation; and

    b.      You are receiving Physician's Care. We will waive this requirement If We receive written proof acceptable to Us that further care would be of no benefit to You; and

    c.      You are not Totally Disabled.

Residual Disability must follow right after a period of Total Disability that lasts at least as long as the Qualification Period, if any. This period is shown on the Policy Schedule.

(Pg. ID # 960.)  "Your Occupation" is defined as "the occupation or occupations in which You are regularly engaged at the time Disability begins."  (Pg. ID # 959.)

### 3. Policy Number 06-7912074

On December 20, 2002, Provident issued policy number 06-7912074 (the "2074 Policy") to Plaintiff.  (Pg. ID # 989.)  With respect to "Total Disability," the 2074 Policy states:

Total Disability or Totally Disabled means that because of Injuries or Sickness:

    1.      You are unable to perform the material and substantial duties of Your Occupation; and

    2.      You are not engaged in any other occupation; and

    3.      You are receiving Physician's Care.  We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

6

(Pg. ID # 998.)  The monthly benefit amount for a period of "Total Disability" is the "Total Disability Monthly Amount" which is $400.00 under the 2074 Policy.  (Pg. ID ## 1002, 993.)  In terms of "Residual Disability," the 2074 Policy states that:

> Residual Disability of Residually Disabled means that You are not Totally Disabled, but due to Injury or Sickness:
>
> 1.   You are unable to perform one or more of the material and substantial duties of Your occupation; or You are unable to perform them for as long as normally required to perform them; and
> 2.   You are receiving Physician's care.   We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You.
>
> After the end of the limitation Period, Residual Disability or Residually Disabled also means:
>
> 3.   You incur a loss of Earnings while You are engaged in Your Occupation or Any Occupation.

(*Id.*)  "Your Occupation" is defined as "the occupation or occupations, as performed in the national economy, rather than as performed for a specific employer or in a specific location, in which You are regularly engaged at the time You become Disabled."  (Pg. ID # 998.)

## C.  The Claims Process

After the March 2009 surgery that left Plaintiff unable to practice dentistry, he filed a "Total Disability" claim, and in July 2009 Defendants began paying Plaintiff "Total Disability" benefits under each Policy.  (Pg. ID # 1286.)  However, on September 27, 2010, Defendants informed Plaintiff by letter that "benefit payments have not been issued beyond August 9, 2010" under the 8090 and 2074 Policies because he was "engaging in another occupation which is gainful."  (Pg. ID # 1189.)  As for the 0013

7

Policy, Defendants' August 10, 2011 letter notified Plaintiff they were "unable to consider additional payable benefits beyond the paid-to-date of July 9, 2011."[4] (Pg. ID # 1221.)  Defendants explained, "it is our determination at the time of disability, you were engaging in Dental duties and also in Owner/Operator duties managing your businesses." (*Id.*)  Further, they explained, "[a]s you continue to engage in the Owner/Operator duties of the occupation you were engaged in at [the] time of disability it is appropriate to handle your claim according to the Residual Disability provisions." (*Id.*)  A September 8, 2011 letter affirmed Defendants' previous statements concerning Plaintiff's "Occupation":  "we have determined it is best to define you[r] occupation as Dentist and Owner/Operator at [the] time of disability." (Pg. ID # 1233.)  Plaintiff unsuccessfully appealed each adverse claim decision to an Unum appeals specialist.

### D.  Current Litigation

On December 5, 2012, Plaintiff filed suit against Defendants alleging breach of contract (Count I) and fraud and misrepresentation (Count II).  As relief, Plaintiff seeks "an amount equal to the Monthly Benefits due under the Policies less the amounts of the reduced Monthly Benefits paid" and an order declaring that Plaintiff is entitled to lifetime "Total Disability" benefits under the three policies. (Pg. ID # 6.)  Additionally, Plaintiff seeks penalty interest of 12% per annum pursuant to Mich. Comp. Laws 500.2006(4).  (*Id.*)  Defendants counterclaimed stating that "Plaintiff was paid benefits under the Policies to which he was not entitled" and, as such, Defendants seek

---

[4] Defendants ultimately issued two additional checks for August 2011 and September 2011 under the 0113 Policy and accordingly the parties agree that Defendants officially ceased payment under that Policy in October of 2011.  (Pg. ID # 1345.)

repayment of the alleged overpayment.  (Pg. ID # 26.)  On March 20, 2013, the court

granted Defendants' motion to dismiss Plaintiff's fraud claim.  Both parties now move for

summary judgment on Plaintiff's remaining breach of contract claim.[5]

## II. STANDARD

Summary judgment is proper only when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "In deciding a motion for summary judgment, the court must view the evidence in

the light most favorable to the non-moving party, drawing all reasonable inferences in

that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

The movant has the initial burden of showing the absence of a genuine dispute

as to a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden

then shifts to the nonmovant, who must put forth enough evidence to show that there

exists "a genuine issue for trial."  *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004)

(citing *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Summary judgment, therefore, is not appropriate when "the evidence presents a

sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly

supported motion for summary judgment—the disputed factual issue must be material.

---

[5] Although Defendants briefed the issue of Plaintiff's entitlement to "Residual Disability" benefits, Plaintiff does not seek "Residual Disability" benefits; he claims he is entitled to "Total Disability" benefits under the three Policies.  (Pg. ID # 1345.)  As such, the "Residual Disability" provisions will be discussed only insofar as they relate to interpretation of the Policies' respective "Total Disability" provisions.

9

A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

This is a diversity action in which the court applies federal procedural law and state substantive law. *See Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *see also Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000) ("In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state.").

### III. DISCUSSION

Construction and interpretation of an insurance contract is a question of law for the court. *Ann Arbor Pub. Sch. v. Diamond State Ins. Co.*, 236 F. App'x 163, 165 (6th Cir. 2007) (citing *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193 (Mich. 1999)). In Michigan, a court "look[s] at the language of the insurance policy and interpret[s] its terms in accordance with the principles of contract construction." *Allstate Ins. Co. v. Muszynski*, 655 N.W.2d 260, 261–62 (Mich. Ct. App. 2002). The commonly used meaning of the terms controls, unless the insurance contract expressly defines them. *Grp. Ins. Co. v. Czopek*, 489 N.W.2d 444, 447 (1992). "The primary goal in interpreting contracts is to determine and enforce the parties' intent." *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 666–67 (Mich. Ct. App. 2000) (citing *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29 n.28 (Mich. 1994)). To effectuate this goal, a court must "examin[e] the language of the contract according to its plain and ordinary meaning." *In re Smith Trust*, 745 N.W.2d 754, 757–58 (Mich. 2008) (citing *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832, 837 (Mich. 1999)). To decipher the parties' intent, a court

10

must also read the contract "as a whole"; "[e]very word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument." *Associated Truck Lines, Inc. v. Baer*, 77 N.W.2d 384, 386 (Mich. 1956) (quoting *Laevin v. St. Vincent de Paul Soc'y*, 36 N.W.2d 163, 164 (Mich. 1949)) (internal quotation marks omitted).

"An insurance contract is clear if it fairly admits of but one interpretation. An insurance contract is ambiguous if, after reading the entire contract, its language reasonably can be understood in differing ways." *Farm Bureau Mut. Ins. Co. v. Blood*, 583 N.W.2d 476, 478 (Mich. Ct. App.1998) (citations omitted). If a court determines that "the contractual language is unambiguous, [it] must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith*, 745 N.W.2d at 758. However, where a court determines that an insurance contract is ambiguous, Michigan law requires that, "[a]mbiguities and reasonable doubts . . . [be] construed most favorably to the insured to maximize coverage." *Carlyon v. Mut. of Omaha Ins. Co.*, 559 N.W.2d 407, 408 (Mich. Ct. App. 1996) (citing *American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 480 (Mich. 1996); *Erickson v. Citizens Ins. Co.*, 550 N.W.2d 606, 608 (Mich. Ct. App. 1996)).

### A.  The 0113 Policy

Plaintiff argues that he is entitled to "Total Disability" benefits under the 0113 Policy. Regarding "Total Disability," the 0113 Policy states:

"Total Disability" means that because of Injury or Sickness:

      a.      You are unable to perform the important duties of Your Occupation; and

      b.      You are under the regular and personal care of a Physician.

(Pg. ID # 920.)  Each part of the definition will be discussed, but the court will begin with the physician's care requirement.

*1.  Plaintiff is "under the regular and personal care of a Physician"*

For the first time, in their response to Plaintiff's motion for summary judgment, Defendants attempt to refute that Plaintiff is "under the regular and personal care of a Physician".  This argument is absent from Defendants' answer, as well as its own motion for summary judgment and its reply in support of that motion.

To support their argument, Defendants point to two renewal applications for dental malpractice insurance with CNA Insurance Company signed by Plaintiff on July 1, 2009, and August 13, 2013.  Defendants quote the following question from the first application, "[h]ave you been treated for . . . mental illness or physical impairment? If "yes" provide a letter from treating physician with complete details."  (Pg. ID # 1331.)  Plaintiff checked "[n]o."  (*Ia.*)  Defendants quote the following similar question from the second application, "[h]ave you ever been or are currently being treated for . . . Mental Illness [or] Physical Impairment? If "yes" provide a letter from treating physician with complete details."  (Pg. ID # 1339.)  Plaintiff again checked "[n]o."  (*Ia.*)  Relying on these excerpts, Defendants argue that Plaintiff has admitted that he was not "treated for any mental or physical impairment from the time of his alleged March 2009 disability through at least August 30, 2013."  (Pg. ID # 1313.)  As Plaintiff points out in his response, Defendants' quotations omit a significant qualifier from each application question.  Before the specific question and answer Defendants quoted, each application

12

states, "[d]uring the previous 12 months, have any of the following occurred which have

NOT previously been reported to the insurance company?" (Pg. ID ## 1331, 1339.)  In

omitting the qualifier "which have NOT previously been reported," Defendants

mischaracterize Plaintiff's answers on the renewal applications.  Plaintiff attached an

affidavit to his reply stating that prior to the August 2013 renewal application, he

previously reported his disability and medical information to CNA.  (Pg. ID # 1394.)

Plaintiff's affidavit does not mention the July 21, 2009 application renewal form,

and therefore does not address Defendants' argument that Plaintiff "admitted" he was

not "under the regular and personal care of a Physician" from March 2009 to July 21,

2009.  However, when initially filing his claim for disability benefits, Plaintiff submitted to

Defendants a June 6, 2009 Attending Physician Statement ("APS") completed by Dr.

Seyfried of Henry Ford Hospital.  (Pg. ID # 1012.)  The APS lists March 10, 2009 under

"date of first visit regarding current conditions" and June 4, 2009 under "date of last

examination."  (Pg. ID # 1021.)  In addition to listing Plaintiff's "current treatment

program" and "medication," it also indicates that Plaintiff was under the care of two other

Henry Ford doctors, Dr. Crotty, a neurosurgeon, and Dr. Desilva, an orthopedist.  (Pg.

ID # 1012.)  Plaintiff's disability claim form, dated June 11, 2009, lists six doctors under

"[p]lease list ALL treatment providers with whom you are currently treating" including Dr.

Seyfreid and Dr. Crotty.  (Pg. ID # 1123–24.)  The list details each doctor's specialty

and the date of Plaintiff's last visit.  (*Id.*)  Finally, the court observes that Defendants'

July 2, 2009 letter initiating payment of "Total Disability" benefits states, "[b]ased on

review of the available information which accompanied your claim form, there is

reasonable support for you meeting your policies' definitions of Total Disability

13

beginning on March 11, 2009." (Pg. ID # 1146.) If Plaintiff met the definition of "Total Disability" then Defendants would have had to have determined that he was "under the regular and personal care of a Physician." The overwhelming evidence confirms that Plaintiff was "under the regular and personal care of a Physician" from March 2009 to July 21, 2009.

Moreover, the record establishes that Plaintiff remains "under the regular and personal care of a Physician." In his August 17, 2013, deposition Plaintiff testified that he sees Dr. Emmer, Dr. Shuker, and Dr. Pierce for nerve damage. (Pg. ID # 885.) Plaintiff testified that he sees Dr. Shuker, an internist, once a year. (*Ia.*) During Plaintiff's last visit, Dr. Shuker reviewed Plaintiff's medications, conducted blood work, examined Plaintiff's gastrointestinal tract, and referred him to Dr. Emmer. (*Ia.*) Dr. Emmer, a neurologist, has been treating Plaintiff for "several years, two years, three years" and Plaintiff sees him every three to four months where Dr. Emmer reviews Plaintiff's medication and performs neurological tests and MRIs. (*Ia.*) After a brief relationship with another Doctor, Plaintiff began to see Dr. Pierce for his chronic pain. (Pg. ID # 886.) When Plaintiff last saw Dr. Pierce, approximately a year before the deposition, Dr. Pierce administered steroid injections and directed Plaintiff to participate in physical therapy. (*Ia.*) Plaintiff underwent physical therapy for approximately a year and once he learned "their movements" began to practice them at home. (*Ia.*) Plaintiff has also been seeing a Psychiatrist, Dr. Omar, for the past "three to four years" on a regular basis—"every three months; every two months, three months." (*Ia.*)

Defendants have not set forth sufficient evidence to create a genuine issue of material fact on the question of whether Plaintiff is "under the regular and personal care

of a Physician."  The nonmovant "must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury."  *Kerwin v. Paul Revere Life Ins. Co.*, 6 F. App'x 233, 240 (6th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ("If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").  The court concludes that, as a matter of law, Plaintiff has been "under the regular and personal care of a Physician" since his March 2009 surgery.  No reasonable jury could find differently based on the evidence presented in the record.

   2.  *Plaintiff is "unable to perform the important duties of [his] Occupation"*

   To decide if Plaintiff is "unable to perform the important duties of [his] Occupation" the court must first determine Plaintiff's occupation.  "Your Occupation" is defined as "the occupation in which You are regularly engaged at the time You become Disabled."  (Pg. ID # 920.)  Prior to Plaintiff's 2009 cervical disc herniation surgery, he performed dental procedures at Stoneybrook Dental 35 to 40 hours a week.  (Pg. ID ## 1282.)  At that time, he also spent 15 to 25 hours per week "managing/overseeing all his businesses, both dental and non-dental."  (Pg. ID # 542.)  Put differently, Plaintiff spent roughly two thirds of his time performing dental procedures and the other third of his time managing and overseeing his dental practices and other businesses.  However, Plaintiff's management and oversight duties generated approximately half of his income.[6]  (Pg. ID # 1344.)

_____

   [6] Defendants argue at length that when determining what constitutes the important duties of an insured's "Occupation" before he or she became disabled, the

Having established that Plaintiff's "Occupation" entailed two thirds of his time spent performing dentistry and one third of his time managing and overseeing his practices, the crux of the issue returns:  is Plaintiff "unable to perform the important duties of [his] occupation" and thereby "Totally Disabled?"  The parties fundamentally agree that general dentistry constituted *an* important duty of Plaintiff's "Occupation." However, the parties dispute whether Plaintiff is "Totally Disabled" under the Policy because, despite his disability he continues to manage and oversee his dental practices and businesses.  Defendants point out that to be "Residually Disabled," Plaintiff must be "unable to perform *one or more* of the important duties of Your Occupation." (emphasis added.)  Reading the "Residually Disability" provision together with the "Totally Disability" provision, Defendants say, requires that Plaintiff be unable to perform "all" of

_____

portion of income derived from specific duties is *the* central consideration.  Accordingly, they emphasize that "immediately before [Plaintiff's] alleged disability, less than half of his W-2 income was from performing dentistry, and the balance was for activities other than dentistry (*i.e.*, management and administration.)"  (Pg. ID # 282–83.)  Defendants principally rely on *Gross v. UnumProvident Life Ins. Co.*, 319 F. Supp. 2d 1129, 1150 (C.D. Cal. 2004), for this argument and quote the following line from that case:  "that an insured derives a substantial portion of his income from a certain occupational duty may be some indication that the duty is an important one." 319 F. Supp. 2d at 1150.  Just two sentences earlier, however, *Gross* noted that, "[b]ecause occupational disability policies are designed to indemnify against loss of capacity to work, not against loss of income, the fact that a claimant derives a larger income from a new occupation will not bar recovery under his disability policy." *Id.* (citation and quotation marks omitted). Further, even if the court were to assume that derivation of a substantial portion of income from a particular duty indicates that that duty is important, the converse is not necessarily true.  An important duty does not necessarily generate a large portion of one's income.  In fact, an *essential* duty may generate comparatively little income. Finally, even focusing on Defendants' proxy, income generation, practicing dentistry was undeniably an important duty of Plaintiff's occupation preceding his disability. Plaintiff agrees that before surgery, he derived approximately half of his income from performing dentistry.  (Pg. ID # 1355.)  Thus, after the surgery, none of Plaintiff's income is derived from the practice of dentistry.

16

the important duties of his "Occupation" to be "Totally Disabled."  Conversely, Plaintiff stresses that "'important duties' does not mean 'all' or 'each and every'" (Pg. ID # 1354), and that as Plaintiff can no longer practice general dentistry—what he deemed as his "Occupation"—he is "Totally Disabled."

Courts appear to take one of two approaches when interpreting disability insurance policies with similar, and in many cases the same, language.  Under the first approach, upon which Defendants rely, courts have interpreted similar language to mean that an insured must be unable to perform "all" of his important duties to be considered "Totally Disabled."  These courts have held that an insured's ability to perform just one important duty precludes a determination of total disability.  The logic of the first approach is that where a policy provides for total and residual/partial disability, an insured cannot be "Totally Disabled" if the insured is able to perform some of the important duties of his "Occupation" because any other construction would render the residual/partial disability provision meaningless.  For example, in *Canu v. Nat'l Life Ins. Co.*, 12-12838, 2013 WL 1883534, at *6 (E.D. Mich. May 6, 2013), Judge Cohn explained:

> National Life correctly states that the "total disability" provisions in the policies must be read together with the "partial/residual disability" provisions.  As other courts have held, when a policy provides for both "total" and "residual" disability insurance benefits, the terms must be read in conjunction with one another.  When total and residual disability are read together in an insurance policy such as the one here, total disability requires that the insured be unable to perform all of his significant duties of his occupation. *See, e.g.*, *Miller v. Northwestern Mut. Life Ins. Co.*, 392 F.3d 973 (8th Cir. 2004); *Dym v. Provident Life and Acc. Ins. Co.*, 19 F. Supp. 2d 1147, 1149–50 (S.D. Cal.1998).  Any other interpretation would render the policies' residual disability provisions nugatory.  Such an interpretation would be inconsistent with Michigan's requirement that insurance contracts be read as a whole so as to give effect to every provision.

17

However, the policy language in *Miller*, upon which *Canu* partially relies, differed from

that of the 0113 Policy.  *See Stoneman v. Paul Revere Life Ins. Co.*, 12-15334, 2013

WL 6768616 *at 13 n.8 (E.D. Mich. Dec. 20, 2013) (Duggan, J.) (interpreting Policy

language identical to that of the 0113 Policy).  "In *Miller*, the relevant policy defined an

insured as 'not totally disabled' when the insured 'can perform one or more of the

principal duties of the regular occupation.  Therefore, *Miller* is inapposite.  As such,

[Defendants'] reliance on *Canu* . . . is called into question."  *Ia.* (citations omitted).

Irrespective of *Canu*, the court acknowledges that numerous other courts have followed

the first approach.  *See, e.g.*, *Yahiro v. Northwestern Mutual Life Insurance Co.*, 168 F.

Supp. 2d 511, 517 (D. Md. 2001); *Falik v. Penn Mut. Life Ins. Co.*, 204 F. Supp. 2d

1155, 1156-57 (E.D. Wis .2002); *Conway v. Paul Revere Life Ins. Co.*, No:

5:99CV150–T, 2002 WL 31770489, at *9 (W.D.N.C. 2002).

     Under the second approach, which Plaintiff endorses, courts find the definitions

of "Total Disability" and "Residual Disability" ambiguous.  Using this approach, courts

explain that just because an insured is able to continue in "some" of his pre-disability

duties, he is not precluded from "Total Disability" benefits.  For example, in *Giddens v.*

*Equitable Life Assur. Soc. of U.S.*, 445 F.3d 1286, 1298 (11th Cir. 2006), the Eleventh

Circuit Court of Appeals concluded that ambiguity existed in a similar "Total Disability"

provision, explaining:  "[w]e do not suggest that 'all' is an unreasonable interpretation of

the policy language, but we do say that 'most' or the 'majority' of the substantial and

material duties is also a reasonable interpretation if an insured is unable to engage in

his regular occupation as a result of his inability to perform most or the majority of those

duties."  *Giddens* held that the plaintiff-insured was not precluded from showing a "Total

Disability" despite retaining an ability to "perform a few substantial and material duties—including . . . selecting house plans, materials, and subcontractors—" because "his ability to perform those tasks in isolation still would not allow [plaintiff] to continue in his real estate development occupation [where] he is unable to perform his entrepreneurial, financial, planning, coordinating, and administrative duties, which were the heart of his real estate occupation." *Id.* In interpreting similar policy provisions, the Eighth Circuit Court of Appeals reached the same result as the Eleventh Circuit: "[t]he policies' definitions of 'total disability' are susceptible to differing interpretations, because the policies do not speak in terms of "any," "all," "some," or "the most important part" of [the insured's] duties." *Dowdle v. Nat'l Life Ins. Co.*, 407 F.3d 967, 970 (8th Cir. 2005). *Dowdle* held that a surgeon who could no longer stand long enough to perform orthopedic surgery but who could conduct office visits, see patients, read x-rays, perform independent medical examinations, interpret data, and promote referrals was totally—not residually—disabled because he could not perform "the most important substantial and material duty" of his pre-disability occupation. *Id.* at 972. *Dowdle* emphasized that it was relying on Minnesota law, which requires an interpretation in favor of coverage when a contract is ambiguous. As noted previously, like Minnesota, under Michigan law, "[a]mbiguities and reasonable doubts in insurance contracts are construed most favorably to the insured to maximize coverage." *Carlyon*, 559 N.W.2d at 408.

The court finds the latter view more convincing. Under Michigan law,

A contract is said to be ambiguous when its words may reasonably be understood in different ways. If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular

19

> circumstances and another fair reading of it leads one to understand there
> is no coverage under the same circumstances the contract is ambiguous and
> should be construed against its drafter and in favor of coverage.

*Raska v. Farm Bureau Mut. Ins. Co. of Mich.*, 314 N.W.2d 440, 441 (Mich. 1982).

Because "unable to perform the important duties of Your Occupation" could reasonably

be interpreted as inability to perform "all" of the important duties or "some" of the

important duties of one's "Occupation," the provision is ambiguous.  A recent Eastern

District of Michigan case, *Stoneman*, 2013 WL 6768616, at *14, followed the second

approach and concluded that the Policy at issue, containing identical language to that of

the 0113 Policy, was ambiguous because the language is susceptible to more than one

reasonable interpretation.  *Stoneman* also noted that its finding of ambiguity "is

bolstered by Michigan case law providing that when 'a conflict of opinion' regarding

interpretation of insurance contract language arises among courts both in and out of

state, the language is at least 'of doubtful meaning and requires construction.'"  *Id.*

(citing *C. & J. Commercial Driveway v. Fid. & Fid. & Guar. Fire Corp.*, 242 N.W. 789,

790–91 (Mich. 1932); *see also Mich. Millers Mut. Ins. Co. v. Bronson Plating Co.*, 519

N.W.2d 864, 869 n. 8 (Mich. 1994) (finding "the division of authority" over interpretation

of insurance contract language "to be instructive and to at least lend credence to the

position that more than one reasonable interpretation of the term exists"), *overruled on

other grounds by Wilkie v. Auto–Owners Ins. Co.*, 664 N.W.2d 776 (Mich. 2003).  The

court finds the reasoning of *Stoneman* persuasive.

Finally, the court notes that a finding of ambiguity does not nullify the "Residual

Disability" provision.  Instead, reading the "Total Disability" and "Residual Disability"

provisions together "creates a continuum of disability."  *Oliver v. Nat'l Life Ins. Co.*, 09-

20

11040, 2011 WL 590465, at *7 (E.D. Mich. Nov. 22, 2011) (Zatkoff, J.) (citations

omitted).  In reference to the concept of a "continuum of disability," the Eleventh Circuit

explained,

> If the insured is unable to perform only "one or more" of many material
> occupational duties, then the insured would not be totally disabled.  Where
> the insured . . . is unable to perform most or the majority (but not all) of the
> material duties and thus cannot engage in his regular occupation, the insured
> nevertheless is totally disabled from his regular occupation, and this
> interpretation does not nullify the Residual Disability clause.  At some point,
> a line must be drawn where the disability becomes so severe, and affects
> such a large percentage of the insured's material and substantial duties, that
> the disability is total rather than residual.  The language of the Residual
> Disability clause does not suggest where that line should be drawn and
> certainly does not require that it be drawn only where [the insurance
> company] suggests.

*Giddens,* 445 F.3d at 1300–01.  The court agrees that "Total Disability" and "Residual

Disability" are not mutually exclusive categories.  "Had Defendant[s] meant 'all'

'[important]' duties, [they] could have expressly stated such."  *Oliver*, 2011 WL 5904651,

at *7; *see also Stoneman*, 2013 WL 6768616, at *13 ("If [Defendant] means 'all' in its

Total Disability clause, then it may amend its policies to make that simple change.").

In summary, Plaintiff's reading that "the important duties" does not mean "all

important duties" is reasonable.  Before his March 2009 surgery, Plaintiff spent

approximately two thirds of his time performing dental procedures.  Plaintiff is now

unable to perform duties that constituted roughly two-thirds of the time he spent

pursuing his occupation.  Having found that the policy language, "[y]ou are unable to

perform the important duties of Your Occupation" is ambiguous, Michigan law requires

the court to construe the Policy most favorably to the insured to maximize coverage.  In

conformity with this rule, Plaintiff is "Totally Disabled" under the 0113 Policy.  As

explained in the background section, under the 0113 Policy, the monthly benefit amount for a period of "Total Disability," appears to be $8,800.00.  (Pg. ID ## 922, 914.) Because his "Total Disability" began before he turned 65, Plaintiff is entitled to "Lifetime" benefits under the 0113 Policy.  (Pg. ID # 910.)  With respect to the 0113 Policy, Defendants' motion for summary judgment will be denied and Plaintiff's motion for summary judgment will be granted.

### B.  The 8090 Policy and the 2074 Policy

*1. "Total Disability" under the 8090 Policy and the 2074 Policy*

Plaintiff argues that he is entitled to "Total Disability" benefits under the 8090 and 2074 Policies.  Unlike the 0113 Policy's two-part formulation, the 8090 and 2074 Policies use a three-part formulation to define "Total Disability."  The 8090 Policy states:

"Total Disability" means that because of Injury or Sickness:

a. You are unable to perform the important duties of Your Occupation; and
b. You are not engaged in any other gainful occupation; and
c. You are receiving Physician's Care.  We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to you.

(Pg. ID # 959.)  The 2074 Policy states:

Total Disability or Totally Disabled means that because of Injuries or Sickness:

1. You are unable to perform the material and substantial duties of Your Occupation; and
2. You are not engaged in any other occupation; and
3. You are receiving Physician's Care.  We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

(Pg. ID # 998.)  The first part in the 8090 Policy definition of "Total Disability"—"You are unable to perform the important duties of Your Occupation," is identical to the first part of the 0113 Policy discussed in the previous section.  That language is also substantially similar to the first part in the 2074 Policy—"You are unable to perform the material and substantial duties of Your Occupation."  "Important" has simply been replaced with "material and substantial" and connotes the same meaning and effect.[7]

The "Residual Disability" provision is also similar, or the same, in the three Polices.  The 0113 Policy and the 8090 Policies both include, "You are unable to perform one or more of the important duties of Your Occupation" in the "Residual Disability" provision.  The 2074 Policy also contains similar "Residual Disability" language—"You are unable to perform one or more of the material and substantial duties of Your Occupation."  The sole difference between the 0113/8090 and 2074 Policies' "Residual Disability" provision is the replacement of "important" with "material and substantial" which effectuates the same meaning and result.  Given the functionally equivalent language in all three Policies, the analysis provided in the preceding section regarding the 0113 Policy is applicable to the 8090 and 2074 Policies.  Similarly, insofar as Defendants' argue that Plaintiff has not met the physician's care requirement under the 8090 and 2074 Policies' "Total Disability" definitions, as discussed in the previous section, they have waived that argument.

_____

[7] The parties do not attempt to distinguish between the 0113 Policy and the 8090/2074 Policies on the basis of the replacement of the word "important" with the words "material and substantial."

23

Defendants attempt to distinguish the 8090 and 2074 Policies from the 0113 Policy because of the three-part definition of "Total Disability" in the 8090 and 2074 Policies.  As noted above, the second part of the definition of "Total Disability" in the 8090 and 2074 Policies states, "[y]ou are not engaged in any other gainful occupation" and "[y]ou are not engaged in any other occupation," respectively.  Under the 8090 Policy, "Your Occupation" is defined as "the occupation or occupations in which You are regularly engaged at the time Disability begins."  (Pg. ID # 959.)  Under the 2074 Policy, "Your Occupation" is defined as "the occupation or occupations, as performed in the national economy, rather than as performed for a specific employer or in a specific location, in which You are regularly engaged at the time You become Disabled."  (Pg. ID # 998.)

As established in the preceding section, prior to Plaintiff's surgery, he performed dental procedures at Stoneybrook Dental 35 to 40 hours a week and also spent 15 to 25 hours per week "managing/overseeing all his businesses, both dental and non-dental." (Pg. ID ## 1282, 397, 542.)  A June 23, 2009, "action plan" written shortly after Plaintiff's surgery by Jodie Duval, Defendants' Disability Benefits Specialist, verified Plaintiff's primary occupational duties as performing general dentistry:

> Self-reported Substantial & Material Occ Duties: Perform dental services, 34 hours per week
>
> Substantial & Material Occ Duties Validated? Yes
>
> Validated Substantial & Material Occ Duties: Perform dental services, 34 hours per week.

(Pg. ID # 1143.)  However, approximately two years after Plaintiff's surgery, on September 8, 2011, Defendants' unilaterally modified Plaintiff's "Occupation" from

24

"Dentist" to "Dentist and Owner/Operator."  (Pg. ID # 1233.)  Consistent with their

modification of Plaintiff's "Occupation," when discussing the 0113 Policy, Defendants

emphasized that "Plaintiff's occupation at the time of disability as of March 2009 was not

merely a practicing dentist, but included owning, managing and purchasing several

other dental practices, all of which he continued to do after March 2009."  (Pg. ID

# 282.)  As stated earlier,"Total Disability" under the 0113 Policy is defined using a two-

part formulation:

> "Total Disability" means that because of Injury or Sickness:
>
> a.    You are unable to perform the important duties of Your
>        Occupation; and
> b.    You are under the regular and personal care of a Physician.

(Pg. ID # 920.)  Thus, according to Defendants, if Plaintiff's former "Occupation" was

exclusively a "dentist" and he could no longer perform dentistry he would be "Totally

Disabled" because he would be "unable to perform the important duties of [his]

Occupation."  But, under the redefined title of "Dentist and Owner/Operator" Plaintiff is

still an "Owner/Operator" post-disability, so he cannot say that "he is unable to perform

the important duties of [his] Occupation."  Nonetheless, in the preceding section,

Plaintiff's "Occupation" was determined under the terms of the 0113 Policy, irrespective

of his official listed "Occupation."

   However, Defendants reformulation of Plaintiff's title bolsters Plaintiff's argument

that he is "Totally Disabled" under the 8090 and 2074 Polices's three-part definition of

"Total Disability."  To reiterate, the 8090 Policy states:

> "Total Disability" means that because of Injury or Sickness:

a.    You are unable to perform the important duties of Your Occupation; and

b.    You are not engaged in any other gainful occupation; and

c.    You are receiving Physician's Care.  We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to you.

(Pg. ID # 959.)  The 2074 Policy states:

Total Disability or Totally Disabled means that because of Injuries or Sickness:

1.    You are unable to perform the material and substantial duties of Your Occupation; and

2.    You are not engaged in any other occupation; and

3.    You are receiving Physician's Care.  We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

(Pg. ID # 998.)  The second part in each, "You are not engaged in any other gainful occupation" and "You are not engaged in any other occupation" respectively, is absent from the 0113 Policy which uses only a two-part definition of "Total Disability."  Before the modification, when Plaintiff's title was "Dentist," Defendants might have argued that under the 8090 or 2074 Policies Plaintiff was no longer a "dentist" post-disability but that he was engaged in an "other occupation" or "other gainful occupation"—that of an "Owner/Operator."  However, due to their modification of Plaintiff's "Occupation" from "Dentist" to "Dentist and Owner/Operator" that argument is now unavailable to Defendants; Plaintiff is not engaged in an "other occupation" or "other gainful occupation."

Accordingly, the court concludes that the 8090 and 2074 Policies are ambiguous and coverage will be construed to maximize coverage to the insured, Plaintiff.

*2.  The 24-Month "Mental Disorder" Limitation in the 2074 Policy*

26

With respect to the 2074 Policy only, Defendants argue that Plaintiff is not entitled to summary judgment because of that Policy's "Mental Disorder" exclusion. The 2074 Policy states: "[i]f your disability is contributed to or caused by a Mental Disorder, We will pay benefits according to the provisions of this Policy, except as limited by the Maximum Benefit Period for Mental Disorders." (Pg. ID # 1007.) The Policy states that the "Maximum Benefit Period for Mental Disorders" is "24 months over the life of Your Policy." (Pg. ID # 993.) The Policy defines "Mental Disorders":

> Mental Disorders means any disorder (except dementia resulting from stroke, trauma, infections or degenerative diseases such as Alzheimer's disease) classified in the Diagnostic and Statistical Manual of Mental Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a Disability. Such disorders include, but are not limited to psychotic, emotional or behavioral disorders, or disorders relatable to stress or to substance abuse or dependency.

(Pg. ID # 996.)

On December 3, 2010, Defendants exercised their contractual right under each Policy and arranged for an independent medical examination of Plaintiff. (Pg. ID # 1293.) Dr. Carol E. Holden, who performed the examination stated in her report, "[t]he pain Dr. Leonor experiences when he attempts to do dental procedures is real; and it is exacerbated by, for example, his anxious anticipation of pain, lack, of confidence that he will be able to succeed, muscle tension, depression, and other psychological factors." (Pg. ID # 1211.) Dr. Holden concluded, "in my opinion, [Plaintiff] cannot return to full-time dentistry at this point." (*Id.*) At Defendants request, Dr. Holden answered additional questions in an addendum. In response to the question, "[i]s your opinion . . . that the insured cannot return to full time dentistry based on physical or behavioral health complaint/symptoms?" Dr. Holden wrote:

It is difficult to disentangle the two: pain is always the result of both physical and psychological factors.  However, given the negative results of all of Dr. Leonor's medical work-ups, it is my opinion that psychological factors are most prominent.

This is not to suggest that Dr. Leonor's pain is "all in his head."  As an illustration (based on my knowledge of typical pain patients, rather than on Dr. Leonor's statements), it is likely that, while anticipating doing a dental procedure, Dr. Leonor worries that he will experience the extreme pain that prompted the trip to the doctor that resulted in the diagnosis of his C4-C5 disk herniation, memories which re-evoke his anger at his surgeon.  He thinks of the procedure he is about to do as a test of whether he will ever be able to perform at his previous level.  He approaches the chair already anxious and tense, and—without being aware that he is doing so—he stands somewhat stiffly and holds his instruments with too much tension.  Stressed, his muscles and joints send pain signals, and Dr. Leonor, anticipating the onset of severe pain and fearing that he will fail to complete the procedure, tenses even more.

(Pg. ID # 1215.)  Plaintiff's deposition testimony confirms that in addition to his physical limitations, he suffers from depression.  In response to the question "what condition or conditions, Doctor, do you believe prevent you from practicing dentistry? Plaintiff answered "physical and psychological."  (Pg. ID # 885.)  Later, Plaintiff testified that his Psychiatrist Dr. Omar diagnosed him with "major depression and something else."  (Pg. ID # 887.)  Given that Plaintiff's disability "is contributed to . . . by a Mental Disorder" the 2074 Policy limits his benefit period to 24 months.

In *Guo v. Reliance Standard Life Ins. Co.*, 08-11027, 2009 WL 2386084 (E.D. Mich. July 30, 2009) (Cleland, J.), the court reached the same result in interpreting the plan language of an insurance Policy.  In *Guo* an ERISA plan provided that "Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24)

28

months." *Id.* at *2.  Initially diagnosed with the physical medical condition of Vertigo,

Guo's anxiety contributed to that condition and the defendant terminated benefits after

24 months.  Based on "the plain language" of the policy, this Court held that "Plaintiff's

total disability need only result in part from a mental or nervous disorder" for benefits to

be limited to 24 months, *id.* at *8, and therefore held that terminating benefits after 24

months was proper even though the plaintiff also suffered from vertigo, a physical

condition.

In the instant case, Plaintiff filed his "Total Disability" claim shortly after his

surgery, and in July 2009 Defendants began paying Plaintiff "Total Disability" benefits

under each of the Policies.[8]  (Pg. ID # 1286.)  However, on September 27, 2010,

Defendants informed Plaintiff by letter that "benefit payments have not been issued

beyond August 9, 2010" under the 8090 and 2074 Policies.  (Pg. ID # 1189.)  Therefore,

Defendants paid Plaintiff "Total Disability" benefits under the 2074 Policy from July 2009

to August 2010—a total of 15 months.  Accordingly, Defendants owe Plaintiff for 9

months of "Total Disability" benefits under the 2074 Policy.[9]

---

[8] A July 2, 2009 letter from Defendants explained, "[u]sing [March 10, 2009] as your date of disability, we calculate that the 90-day non-payable Elimination Period under all three policies was met as of June 9, 2009 and your first month of benefits will be accrued as of July 9, 2009."  (Pg. ID # 1146.)  Thus, Defendants initiated payment in July 9, 2009 for the preceding month.

[9] Plaintiff argues that Defendants waived their argument that the 24 month "Mental Disorder" limitation applies under the 2074 Policy when they did not rely on that provision to deny coverage.  *See Kirschner v. Process Design Assoc.*, Inc., 592 N.W.2d 707, 709 (Mich. 1999) (citations omitted) ("Generally, once an insurance company has denied coverage to an insured and stated its defenses, the insurance company has waived or is estopped from raising new defenses.").  However, when Defendants denied Plaintiff coverage under the 2074 Policy, they had paid Plaintiff 15 months of benefits and thus, at that time, could not have invoked the 24 month "Mental Disorder" limitation.

29

In summary, Plaintiff is "Totally Disabled" under the 8090 and 2074 Policies.  As explained in the background section, under the 8090 Policy, the monthly benefit amount for a period of "Total Disability," is $1,850.00.  (Pg. ID ## 961, 953.)  Because his "Total Disability" began before he turned 61, Plaintiff is entitled to benefits "to age 65" under the 8090 Policy.  (Pg. ID # 957.)  As noted in the background section, under the 2074 Policy, the monthly benefit amount for a period of "Total Disability," is $400.00.  (Pg. ID ## 1002, 993.)  Under the 2074 Policy, because Plaintiff's disability "is contributed to . . . by a Mental Disorder" his benefit period is limited to 24 months and he is owed benefits for 9 months.  With respect to the 8090 and 2074 Policies, Defendants' motion for summary judgment will be denied and Plaintiff's motion for summary judgment will be granted.

### C.  Defendants' Counterclaim

In answering Plaintiff's complaint, Defendants counterclaimed stating that "Plaintiff was paid benefits under the Policies to which he was not entitled" and, as such, Defendants seek repayment of the alleged overpayment.  (Pg. ID # 26.)  Defendants do not mention their counterclaim in their motion for summary judgment.  Regardless, as the court has found that Plaintiff is entitled to "Total Disability" benefits under the Policies, the court will deny Defendants' counterclaim as moot.

### D.  Plaintiff's Claim for Penalty Interest

Plaintiff includes a claim in his complaint seeking penalty interest of 12% per annum pursuant to Mich. Comp. Laws. 500.2006(4). (Pg. ID # 6.)  Mich. Comp. Laws § 500.2006(4) requires an insurer to pay an insured interest when benefits are not paid in a timely manner, "if the claim is not reasonably in dispute."  The determination whether

30

a claim is reasonably in dispute is a matter for the court.  *Jones v. Jackson Nat. Life Ins. Co.*, 819 F. Supp. 1372, 1379 (W.D. Mich. 1993).  If a defendant has relied on "plainly invalid contract clause[s]" or a "plainly erroneous interpretation of law," the court may find no reasonable dispute exists.  *Id.*  Finally, a reasonable dispute can exist even though the remaining causes of action are disposed of under the different standard of summary judgment.  *Kmart Corp. v. Fireman's Fund Ins. Co.*, 88 F. Supp. 2d 767, 774 (E.D. Mich. 2000).  Here, the court finds the clauses in dispute were not plainly invalid, nor did Defendants rely on plainly erroneous legal interpretations.  Therefore, the court finds Plaintiff's insurance claim was "reasonably in dispute" and Plaintiff is not entitled to penalty interest.  Mich. Comp. Laws. § 500.2006(4).  Plaintiff's claim for penalty interest will be denied.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's motion for summary judgment [Dkt. # 29] is DENIED and Plaintiff's motion for summary judgment is GRANTED [Dkt. # 31].

IT IS FURTHER ORDERED that Defendants pay Plaintiff "Total Disability" benefits under the 0113 Policy for the remainder of his lifetime, "Total Disability" benefits under the 8090 Policy until he turns 65, and "Total Disability" benefits under the 2074 Policy for an additional 9 months.

31

Finally, IT IS ORDERED that Plaintiff's claim for penalty interest is denied under

M.C.L. § 500.2006(4).

A separate judgment will issue.

                                    s/Robert H. Cleland
                                    ROBERT H. CLELAND
                                    UNITED STATES DISTRICT JUDGE

Dated:  April 30, 2014


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, April 30, 2014, by electronic and/or ordinary mail.

                                    s/Lisa Wagner
                                    Case Manager and Deputy Clerk
                                    (313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\12-15343.LEONOR.DenyingDMSJGrantingPMSJ.FinalDraft.rljr.wpd